OPINION
{¶ 1} Appellant, David E. Wade, was indicted on aggravated burglary, rape, kidnapping, aggravated robbery, theft of a motor vehicle, theft of property valued over $500, receiving stolen property, failure to comply with an order or signal of a police officer and possession of cocaine for a total of nine counts, many of which contained firearm specifications. After a jury trial, appellant was found guilty on all counts, except the aggravated robbery, and was acquitted of the firearm specifications. The trial court imposed a sentence of ten years for Count One, aggravated burglary; ten years for Count Two, rape; ten years for Count Three, kidnapping; eighteen months for Count Five, theft of a motor vehicle; twelve months for Count Six, theft of property valued over $500; twelve months for Count Seven, receiving stolen property (motor vehicle); eighteen months for Count Eight, failure to comply with an order or signal of a police officer; and twelve months for Count Nine, possession of drugs. The trial court merged Counts Two and Three, and the sentences for Counts One, Five, Six, Seven and Eight were ordered to be served consecutively with each other. The trial court held a sexual predator hearing and adjudicated appellant a sexual predator.
 {¶ 2} Appellant filed a notice of appeal and raises the following assignments of error:
Assignment of Error No. 1:
The court of common pleas erred and deprived Defendant-Appellant of his right to a speedy trial under R.C.2945.71, U.S. Const. Amend. VI and XIV, and Ohio Const. art. I, §10 when it denied his pretrial motion for discharge for failure of the prosecution to bring him to trial within the period provided by law.
Assignment of Error No. 2:
Defendant-Appellant was denied his right to due process and a fundamentally fair trial under U.S. Const. amend. V and XIV and Ohio Const. art. I, § 16 as a result of the prosecutor's improper and/or misleading questions and remarks during cross-examination and/or closing arguments to the jury in the following respects: (a) the prosecutor used the fact of defense counsel's employment of a non-testifying DNA consultant as the basis for accusing Defendant-Appellant of changing his defense to the rape, kidnapping, and burglary charges from one of misidentification to one of consent; (b) the prosecutor cited the absence of any negative testimony regarding the prosecuting witness's chasteness or character as a basis for unfairly bolstering her credibility in the eyes of the jury; (c) the prosecutor urged the jury to consider the reporting officer's opinion regarding the truthfulness of the prosecuting witness's report of a rape as evidence of Defendant-Appellant's guilt, and (d) the prosecutor inflamed the passions of the jury by calling Defendant-Appellant a "terrorist."
Assignment of Error No. 3:
Defendant-Appellant was deprived of his right to be present and to the presence and assistance of his counsel during a critical stage of his jury trial, and his right to due process and a fundamentally fair jury trial under the U.S. Const. amend. V, VI
and XIV, Ohio Const. art. I, §§ 5, 10 and 16 of the Ohio Constitution, and Crim.R. 43(A) as a result of: (a) his exclusion from the proceedings involving the preparation and submission of responses to the jury's questions, (b) the absence of counsel during those proceedings, (c) the irregularities in the procedures employed by the court of common pleas in responding to the jury's questions, and (d) the incorrect, incomplete, and/or confusing responses to those questions.
Assignment of Error No. 4:
The entry of separate convictions and consecutive prison sentences for two counts of theft and one count of receiving stolen property involving the same victim and the same occurrence contravened R.C. 2913.61(C) and R.C. 2941.25 and subjected Defendant-Appellant to multiple punishments for the same crime in violation of his rights under the Double Jeopardy Clauses of the U.S. Const. amend. V and XIV and Ohio Const. art. I, § 10.
Assignment of Error No. 5:
Defendant-Appellant was denied his right to the effective assistance of counsel guaranteed to him under U.S. Const. amend. VI and XIV as a result of the following omissions by trial counsel: (a) failure to seek reopening of the hearing on the pretrial speedy trial motion based on additional information disclosed for the first time at trial, (b) failure to challenge testimonial and documentary opinion evidence regarding the veracity of the putative victim's account of rape, (c) failure to object to the improper questions and remarks by the prosecutor that are the subject of Assignment of Error No. 2, and (d) failure to request merger of the two theft convictions.
Assignment of Error No. 6:
Defendant-Appellant's convictions for rape, kidnapping, and aggravated burglary are not supported by evidence sufficient to satisfy the requirements of due process under U.S. Const. amend. V and XIV; or, alternatively, are against the manifest weight of the evidence.
Assignment of Error No. 7:
The aggregate 26 year prison term to which Defendant-Appellant was sentenced violated his statutory rights under R.C. Chap. 2929 and his right of due process under U.S. Const. amend. V and XIV
and Ohio Const. art. I, § 16 for the reason that the record clearly and convincingly establishes that the evidence and the findings and reasons recited by the court of common pleas do not support (a) the imposition of maximum prison terms for each offense of conviction and (b) the consecutive service of those prison terms. In accordance with App.R. 5(C)(2), Defendant-Appellant states that the aggregate prison term exceeds the maximum prison term for the most serious offense of conviction and moves this Court for leave to appeal his consecutive prison terms pursuant to R.C. 2953.08(C).
Assignment of Error No. 8:
The adjudication that Defendant-Appellant is a sexual predator is not supported by the common pleas court's findings and is not supported by sufficient evidence.
 {¶ 3} The charges against appellant arose out of events beginning on August 20, 2002. The first witness to testify at the trial was Candice Baugh ("Baugh") who stated that, on that date, she lived in an apartment near The Ohio State University campus. Baugh was a student and was working at the Development Office at The Ohio State University Medical Center. She had come home for lunch around 2:00 p.m., and was starting to make lunch when there was a knock on her door. Baugh peeked out her window and asked the man standing at her door what he wanted. Appellant asked if a different person lived there and then asked to use her telephone. Baugh opened the door slightly and gave him the telephone. When he was finished, she again opened the door slightly but, this time, appellant pushed the door open and entered the apartment. He pulled a silver gun out of his bag and told her to "shut up" and to take her clothes off. (Tr. at 64-65.) He told her to lay down on the living room floor and he laid on top of her and had intercourse. Afterwards, Baugh asked if she could put some clothes back on and she put on her shirt. He told her to pack up her laptop computer and he took her purse, cell phone, cordless phone and car keys. Appellant then left in her Honda Prelude. Baugh put on her pants and ran to her neighbor's apartment, and called the police and her stepfather. Later when the police showed her a photo array, she immediately identified appellant.
 {¶ 4} Bryan Briskey, Baugh's neighbor, testified that Baugh seemed disoriented and looked as if she was fighting back tears when she came to his apartment to use the phone, explaining that she had just been raped and had her car stolen. Chip Thompson, a Columbus Police Officer on a bicycle unit, was the first to respond and stated that Baugh's demeanor when he talked to her was that she was very upset, crying, agitated and a little confused.
 {¶ 5} Heather Camille Jones ("Jones") testified that she lived in an apartment across the street from Baugh. Jones was leaving to go to the store and noticed a man standing on the porch of Baugh's apartment. She was gone for approximately 20 to 30 minutes and, when she returned, the police were there. On September 6, 2002, she was shown a photo array and identified appellant as the man she saw, but she was not positive it was him. Jones did not remember appellant carrying a bag or backpack, but she stated she might not have seen it because she only saw his left side.
 {¶ 6} Cheryll Minke ("Minke"), the Sexual Assault Nurse Examiner ("SANE") from Riverside Methodist Hospital who examined Baugh, found no physical trauma but did find redness on Baugh's cervix. She explained that redness is usually from some trauma or something that has occurred to the cervix and is consistent with recent vaginal intercourse and consistent with the history that Baugh related to her. Minke wrote" acquaintance" on the hospital exam form in response to the relationship of assailant to patient; however, the doctor who examined Baugh dictated notes that stated Baugh was assaulted "by a male that is not known to her."
 {¶ 7} Elderberry Clodfelter ("Clodfelter") testified that, while standing on a street corner, he was approached by a male driving a blue Honda Prelude who was looking for drugs. Clodfelter got inside the car and appellant gave him a cell phone in exchange for drugs. Appellant then reached behind Clodfelter's seat and pulled out a chrome gun and wanted all Clodfelter's money. Clodfelter was able to run from the car. Clodfelter attempted to sell the cell phone, which was later identified as Baugh's phone. Clodfelter identified appellant out of a photo array, identified him in court and identified a picture of Baugh's car as the one appellant was driving.
 {¶ 8} On September 2, 2002, a Columbus police officer saw Baugh's Honda traveling on Wilson Avenue and started to pursue it. After a high-speed chase, appellant hit another vehicle at the intersection of Broad Street and James Road. Appellant exited the car and ran. The police officer caught appellant, who continued to struggle and had a baggy of crack cocaine in his hand
 {¶ 9} Appellant testified in his own defense. He stated that he met Baugh at the Heritage Festival where they exchanged telephone numbers, but he lost her number. On August 20, 2002, he was in Baugh's neighborhood, looking for his cousin's apartment when he saw her drive by him and wave. He went to her apartment and she let him inside. They began talking and kissing, and had sex on the couch. He did not have a gun or weapon. While Baugh took a shower, he stole her purse, cell phone, computer and car. He sold the cell phone to Clodfelter for money, not drugs, and he sold the laptop computer. On September 2, 2002, he was driving Baugh's car, attempted to flee from the police and had an accident.
 {¶ 10} By the first assignment of error, appellant contends that the trial court erred and deprived appellant of his right to a speedy trial under R.C. 2945.71, the Sixth andFourteenth Amendments to the United States Constitution, and Section 10, Article I, Ohio Constitution. Generally, a person who has been charged with a felony must be brought to trial in accordance with R.C. 2945.71, which provides, as follows:
(C) A person against whom a charge of felony is pending:
* * *
(2) Shall be brought to trial within two hundred seventy days after his arrest.
* * *
(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. * * *
 {¶ 11} R.C. 2945.73(B) requires that a defendant must be discharged if he has not been tried within the required time period, and he makes a proper motion at or prior to the commencement of trial. Appellant was arrested on September 2, 2002, and the case was set for trial on November 7, 2002. Following a series of continuances, trial began in May 2003. The transcript of the arraignment hearing conducted on September 25, 2003, indicates that there was a parole/probation holder. (Tr. at 3.)
 {¶ 12} The Ohio Supreme Court has determined that the triple-count provision of R.C. 2945.71 applies only when the defendant is held in jail solely on the pending charges. SeeState v. Kaiser (1978), 56 Ohio St.2d 29, paragraph two of the syllabus. In State v. Brown (1992), 64 Ohio St.3d 476, 479, the Ohio Supreme Court held the existence of a valid parole holder prevents the application of the triple-count provisions of R.C.2945.71. Prior to the commencement of trial, appellant raised the issue of speedy trial and focused his argument on the validity of the first continuance. Defense counsel introduced a copy of the "Request for Revocation of Community Control and Statement of Violation(s)" filed by appellant's probation officer in case No. 00CR-0175. (Defendant's Exh. 2.) Defense counsel further acknowledged that a valid probation holder existed in this case. From the time a valid probation holder existed, appellant ceased to be entitled to the triple-count provision of the statute and was brought to trial within the 270-day speedy trial limit.
 {¶ 13} The thrust of appellant's speedy trial argument was the validity of the first continuance. Appellant argues that the first continuance entry signed by his counsel is not valid because the attorney had stopped functioning as his attorney because of a conflict of interest.[1] The trial was originally set for November 7, 2002, but, on November 4, 2002, defense counsel filed a motion for continuance because he was to be out of town until November 12, 2002. On November 21, 2002, defense counsel was removed because of a conflict of interest since counsel also represented Clodfelter. Appellant contends that counsel had stopped representing his interests when the continuance entry was signed and his speedy trial rights were waived. However, a defendant's right to be brought to trial within the limits of R.C. 2945.71 may be waived by defense counsel for extensions to prepare for trial, as well as conflicts in defense counsel's schedule. State v. McBreen (1978),54 Ohio St.2d 315. This court has held that time is tolled even if the defendant objects to the continuance. State v. Eager (May 2, 1996), Franklin App. No. 95APA09-1165. Defense counsel's power to waive his client's right to a speedy trial is limited to a reasonable period of time or to that length of time which does not constitute ineffective assistance of counsel. Eager; Statev. Jones (Dec. 22, 1994), Franklin App. No. 94APA04-457. Here, the trial was continued the first time until December 5, 2002, and appellant was still brought to trial within the time limits of R.C. 2945.71.
 {¶ 14} Appellant also asserts a constitutional speedy trial violation. The right to a speedy trial is guaranteed by both the United States and Ohio Constitutions. The Sixth Amendment to the United States Constitution provides that an "accused shall enjoy the right to a speedy and public trial." The right to a speedy trial is made obligatory on the states through theFourteenth Amendment. State v. Broughton (1991), 62 Ohio St.3d 253, 256, citing Klopfer v. North Carolina (1967), 386 U.S. 213, 222-223. Section 10, Article I, of the Ohio Constitution contains a similar provision.
 {¶ 15} In Barker v. Wingo (1972), 407 U.S. 514, 530, the United States Supreme Court set forth a balancing test that considers the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. In this case, the delay was not unreasonable and defense counsel was unavailable. Appellant's constitutional right to a speedy trial was not violated. Appellant's first assignment of error is not well-taken.
 {¶ 16} We shall address appellant's third assignment of error next. By the third assignment of error, appellant contends that he was deprived of his right to be present and to the presence and assistance of his counsel during a critical stage of his jury trial, and of his right to due process and a fundamentally fair jury trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution; Sections 5, 10 and 16, Article I, Ohio Constitution; and Crim.R. 43(A) as a result of: (a) his exclusion from the proceedings involving the preparation and submission of responses to the jury's questions; (b) the absence of counsel during those proceedings; (c) the irregularities in the procedures employed by the court of common pleas in responding to the jury's questions; and (d) the incorrect, incomplete, and/or confusing responses to those questions.
 {¶ 17} The jury submitted four sets of written questions to the court during its deliberations. Two responses were signed by the trial judge and two were signed by the trial judge's bailiff. Appellant contends that he and his attorney were not present during the preparation and submission of responses to the jury's questions, and his constitutional rights were violated.
 {¶ 18} In response, appellee, State of Ohio, argues that, while appellant's counsel was contacted by telephone as to the jury's third question, the record does not demonstrate that appellant and his counsel were not present during the preparation and submission of responses to the jury's questions and, in the absence of such an indication, we must presume regularity in the proceedings.
 {¶ 19} "A defendant in a criminal case has a right to be present at all stages of the proceedings, including a communication of the trial judge with the jury regarding his instructions pursuant to a request from the jury." Columbus v.Bright (June 21, 1984), Franklin App. No. 83AP-857; Crim.R. 43. Further, the Sixth Amendment to the United States Constitution, which is made applicable to the states through theFourteenth Amendment to the United States Constitution, guarantees the right to effective assistance of counsel to a defendant in felony cases. Gideon v. Wainwright (1963), 372 U.S. 335. Section 10, Article I, Ohio Constitution provides the same guarantee. The United States Supreme Court has held that the absence of counsel during a critical stage of a trial created a presumption of error and a denial of constitutional rights without requiring a showing of prejudice. See United States v. Cronic (1984), 466 U.S. 648,659, fn. 25. In French v. Jones (C.A. 6, 2003), 332 F.3d 430, the Sixth Circuit Court of Appeals determined that supplemental instructions to the jury constitute a critical stage of the trial. See, also, Caver v. Straub (C.A. 6, 2003), 349 F.3d 340. However, the United States Supreme Court has also determined that ex parte communications between a judge and juror are not always prejudicial and should be analyzed to determine if the communication related to a fact in controversy or any law applicable to the case, and whether the defendant was prejudiced. See Rushen v. Spain (1983), 464 U.S. 114.
 {¶ 20} The Ohio Supreme Court has held that a communication concerning instructions between the judge and jury without the presence of the defendant or his counsel does not constitute grounds for reversal where the defendant's right to a fair trial was not prejudiced by the communication and the error was harmless beyond a reasonable doubt. See State v. Abrams (1974),39 Ohio St.2d 53. If the communication is not "substantive," the error is harmless. State v. Jenkins (1984), 15 Ohio St.3d 164,236-237. In Bostic v. Connor (1988), 37 Ohio St.3d 144, 150, the court held that the trial court's ex parte communication with the jury was harmless error because there was no "possibility that the jury's conclusion was influenced by the court's reply."
 {¶ 21} The transcript indicates that the following occurred:
Thereupon, the further trial of this cause was resumed pursuant to adjournment.
— — —
Thereupon, at 9:00 o'clock a.m., the jury retired and proceeded to deliberate upon the case.
— — —
Thereupon, at 10:25 o'clock a.m., the jury sent to the Court written questions which read as follows:
"Question:
"Can we have a TV/VCR?"
"Can we have a cassett [sic] recorder?"
"Can we take a break?"
The Court returned the following answer:
"18:42.28 is the start time."
"19:11.40 is the ending."
"This is the only portion to be viewed." [Answers signed by Judge Pfeiffer.]
— — —
Thereupon, at approximately 12:00 o'clock p.m., the jury went to lunch.
— — —
Thereupon, the jury resumed its deliberations upon the case pursuant to the luncheon recess.
— — —
Thereupon, at 3:00 o'clock p.m., the jury sent to the Court written questions which read as follows:
"Questions:
"1) Can we have the 911 call record (printout)?"
"2) Is the initial police report available?"
"3) Are we able to obtain/review the transcripts of David Wade and Candace Baugh's testimony?"
The Court returned the following answers:
"1) You have all the exhibits admitted into evidence."
"2) You have all the exhibits admitted into evidence."
"3) A transcript has not been prepared." [Answers signed by Katherine Giacomelli Butcher, Bailiff for Judge Pfeiffer.]
— — —
Thereupon, at 3:40 p.m., the jury sent to the Court written questions which read as follows:
"Question:
"A. Can you clarify the jury instruction for aggravated burglary and aggravated robbery? Can he be found guilty without a gun?
"The specifications are what is confusing with wording on jury instructions."
"B. Does `aggravated' mean weapon?"
— — —
The Court returned the following answers:
"A. Yes, there are alternative theories upon which you could find aggravated burglary and aggravated robbery."
"B. No." [Answers signed by Katherine Giacomelli Butcher for Judge Pfeiffer.]
Thereupon, at 4:07 p.m., the jury sent to the Court a written question which reads as follows:
"A. It states that aggravated robbery must include a deadly weapon (Page 9). On your last response to us, you stated that `aggravated' does not mean weapon."
"Are we misreading or misunderstanding that in order to find the Defendant guilty of aggravated robbery he must have had a deadly weapon?"
The Court returned the following answer:
"You are correct as to the aggravated robbery." [Answer signed by Judge Pfeiffer.]
(Tr. at 560-562.)
 {¶ 22} Admittedly, some of the questions were not substantive, such as: "Can we take a break?" (Tr. at 560.) However, several were substantive, such as: "Can you clarify the jury instruction for aggravated burglary and aggravated robbery? Can he be found guilty without a gun?" (Tr. at 561-562.) While the transcript indicates that, in one instance, defense counsel was available by telephone and objected to the answer that the trial court gave to the jury, there is no indication that appellant or defense counsel participated in the preparation or response to the last jury question regarding whether aggravated robbery must include a weapon. (Tr. at 564.) Unlike the situation in State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, at ¶ 76, where the defendant's counsel had agreed to consultation via telephone, there is no indication here that there was such an arrangement.
 {¶ 23} In several places, the transcript provides that proceedings occurred "in the presence of all Counsel and the Defendant, and in open court." (Tr. at 563, 567.) In other places, the transcript indicates that the jury is not present, such as: "[S]ince we're here without the jury" or "[T]he following proceedings were had between Court and Counsel in open court out of the presence and hearing of the jury as follows[.]" (Tr. at 482, 424, 230, 338.)
 {¶ 24} In State v. Chinn (1999), 85 Ohio St.3d 548, 568, the Ohio Supreme Court stated that the record must affirmatively indicate the absence of a defendant or his counsel during a particular stage of the trial. In this case, as in State v.Sales, Franklin App. No. 02AP-175, 2002-Ohio-6563, the record does indicate the absence of appellant and his counsel by its silence. This court, in Sales, found that the affirmative indications in the transcript of defendant and his counsel's presence at certain times of the trial, such as when the verdict was reached, and the lack of such an indication during the preparation of responses to the jury's questions was sufficient to indicate that the defendant and his counsel were not present. This court, in Sales, further determined that the trial court responses were substantive and possibly incorrect statements of the law. Thus, the record indicated that the trial court employed deficient procedure and required reversal.
 {¶ 25} In this case, the same is true. Not only was the jury confused concerning the instructions, but it is unclear whether the bailiff signed the responses at the direction of the judge or prepared the responses herself; however, given the substantive nature of the communication and the ambiguous signature by the bailiff, the procedure employed by the trial court was deficient. There is a possibility that the jury's conclusion was influenced by the court's responses. As in Sales, even if one aspect of the procedure is insufficient to warrant reversal, the combination of them requires reversal.
 {¶ 26} The answers to the questions regarding a clarification of the aggravated burglary and aggravated robbery instructions were confusing and misleading. While in the abstract, "aggravated" does not mean weapon, in this case, appellant was charged with inflicting or threatening to inflict physical harm and/or had a deadly weapon. R.C. 2911.11(A)(1) does not require proof of the presence of a deadly weapon, but R.C. 2911.11(A)(2) does require such proof. The trial court's response should have made the distinction clear.
 {¶ 27} The state relies on State v. Taylor (1997),78 Ohio St.3d 15, 26, in which the Ohio Supreme Court found the trial court's answer to the jury without consulting defense counsel, while incorrect, was "innocuous." In this case, the answers were not innocuous. As discussed above, the state's reliance onFranklin, in which the trial court answered the jury's questions outside the defendant's presence, is misplaced, as, in that case, defense counsel had agreed to the procedure; however, in this case, there is no indication that appellant or defense counsel agreed that the trial court could answer jury questions outside their presence. Both cases are distinguishable from the facts involved here.[2]
 {¶ 28} Appellant's third assignment of error is well-taken.
 {¶ 29} Given our disposition of the third assignment of error, the second, fourth, fifth, seventh and eighth assignments of error are rendered moot.
 {¶ 30} By the sixth assignment of error, appellant contends that his convictions for rape, kidnapping and aggravated burglary are not supported by evidence sufficient to satisfy the requirements of due process under the Fifth andFourteenth Amendments to the United States Constitution; or, alternatively, are against the manifest weight of the evidence. The issue of whether the convictions are against the manifest weight of the evidence has also been rendered moot by our disposition of the third assignment of error.
 {¶ 31} The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 32} In this case, the victim, Baugh, testified that appellant knocked on her door, asked to use the telephone and, when he was returning the phone, he pushed the door open and entered the apartment and pulled a silver gun out of his bag. He told her to lay down on the living room floor and he laid on top of her and had intercourse. Afterwards, he took her laptop computer, purse, cell phone, cordless phone and car keys, and left in her Honda Prelude.
 {¶ 33} Thompson, a Columbus Police Officer on a bicycle unit, was the first officer to respond and he stated that Baugh's demeanor when he talked to her was that she was very upset, crying, agitated and a little confused. Bryan Briskey, Baugh's neighbor, also testified that Baugh seemed disoriented and looked as if she was fighting back tears when she came to his apartment to use the phone, explaining that she had just been raped and had her car stolen.
 {¶ 34} Baugh's neighbor, who was going to the store, noticed a man standing on the porch of Baugh's apartment. She was shown a photo array and identified appellant as the man she saw, but she was not positive it was him. The SANE nurse who examined Baugh found no physical trauma, but did find redness on Baugh's cervix. Clodfelter testified that he was approached by appellant driving a blue Honda Prelude, who pulled out a chrome gun and wanted all of Clodfelter's money. Clodfelter purchased Baugh's cell phone from appellant. Appellant was arrested while driving Baugh's Honda Prelude.
 {¶ 35} Appellant testified in his own defense and stated that he and Baugh had consensual sex. He admitted while Baugh took a shower, he stole her purse, cell phone, computer and car. He sold the cell phone to Clodfelter for money, not drugs, and he sold the laptop computer. He did admit that, while he was driving Baugh's car, he attempted to flee from the police and had an accident.
 {¶ 36} Appellant argues that Baugh's testimony that he had a gun was implausible; however, Clodfelter also testified that appellant had a gun and they both stated that it was silver. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The existence of conflicting evidence does not render the evidence insufficient as a matter of law. State v. Murphy (2001), 91 Ohio St.3d 516,543.
 {¶ 37} Given the evidence, and while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. This part of appellant's sixth assignment of error is not well-taken.
 {¶ 38} For the foregoing reasons, appellant's second, fourth, fifth, part of the sixth, seventh and eighth assignments of error are rendered moot; his first assignment of error and part of his sixth assignment of error are overruled; and the third assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for a new trial in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded for new trial.
Lazarus, P.J., and Bryant, J., concur.
[1] Although the trial was continued several times and began on May 5, 2003, appellant is only arguing that the first continuance is invalid.
[2] While the jury's first set of questions requesting a VCR, tape recorder and a break are clearly not substantive, the court's answers are not responsive and it is unclear from the record as to whether there was another question from the jury.