OPINION
{¶ 1} Defendant-appellant, Kelly J. Miller, appeals from two judgments of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm those judgments in part and reverse in part and remand the matter for resentencing.
 {¶ 2} A little after midnight on October 22, 2002, appellant walked into the Three Deuces Bar located on West Broad Street in Columbus, Ohio. Howard Carter, the owner of the bar, and Jacquline Caperton, a waitress, were working at the bar that night. Caperton's sister was also at the bar. Appellant asked Carter for a beer but did not have enough money to pay for the beer. Carter gave appellant a beer anyway and walked toward the front of the bar to turn off the lights. When he got to the front of the bar, appellant came up on his side and hit or slapped Carter on the head. Appellant then jumped on top of Carter and began to choke him while he tried to take Carter's wallet. Caperton was in the back of the bar when this occurred but came to the front of the bar when she heard her sister yelling. Caperton saw appellant choking Carter on the ground and jumped on appellant to stop him from hurting Carter. Appellant threw her off and ran out of the bar with Carter's wallet.
 {¶ 3} Around 6:30 p.m. that same day, appellant went to the Big Bear grocery store located in the Central Point Shopping Center on Harrisburg Pike. Inside the store, Trina Tucker, a loss prevention officer, saw appellant putting packages of meat in two plastic bags. Tucker thought appellant was trying to steal the meat and alerted Damon Peaks, a Big Bear cashier, of appellant's activity. Tucker confronted appellant as he made his way to the exit doors. Appellant stopped, dropped the bags of meat and then pushed Tucker aside to leave the store. Tucker, however, grabbed him and prevented him from leaving the store. Peaks and another Big Bear employee, Rick Masterson, assisted Tucker in restraining appellant and preventing him from leaving the store. During the struggle, appellant bit Masterson on his finger, causing it to bleed. Appellant also tried to bite Peaks.
 {¶ 4} Within minutes, officers from the Columbus Police Department arrived at the Big Bear store. Officer Gerry Orick was the first officer to arrive. He arrested appellant, who was still being restrained by the Big Bear employees. When Officer Orick attempted to place appellant in handcuffs, appellant grabbed Officer Orick's arm and tried to bite him. Officer Orick subdued appellant, placed him in handcuffs, and put him in the backseat of his cruiser. While in the cruiser's backseat, appellant began kicking the cruiser's side door and ultimately kicked out the cruiser's back window.
 {¶ 5} As a result of these two incidents, appellant was charged with two counts of robbery in violation of R.C. 2911.02 (the "Three Deuces charges"), two other counts of robbery also in violation of R.C. 2911.02, one count of assault in violation of R.C. 2903.13, and one count of vandalism in violation of R.C. 2909.05 (the "Big Bear charges"). Appellant entered not guilty pleas to all of the charges and proceeded to a jury trial, initially scheduled for January 22, 2003. After five continuances of the trial date, appellant's jury trial began on July 31, 2003. The jury found appellant guilty of the Big Bear charges but was deadlocked on the Three Deuces charges. A second jury trial began on February 18, 2004 for the Three Deuces charges. Appellant represented himself during that trial. The second jury found appellant guilty of the Three Deuces charges. The trial court then sentenced appellant to four years in jail for the Three Deuces charges and a total of six years and five months in jail for the Big Bear charges. The trial court ordered those sentences to be served consecutively, for a total jail term of ten years and five months.
 {¶ 6} Appellant appeals, assigning the following errors:
I. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
II. The trial court erred by imposing consecutive sentences upon the defendant-appellant Contra R.C. 2929.14(e)(4) and 2929.19(B)(2)(C).
III. The trial court erred when it overruled appellant's motion to dismiss for statutory and constitutional speedy trial violations.
 {¶ 7} For ease of analysis, we will address appellant's assignments of error out of order. In his third assignment of error, appellant contends the trial court should have granted his motion to dismiss because the state violated his statutory and constitutional rights to a speedy trial. Appellant does not contest the length of time between his first and second trial. Rather, he contends that the delay between his arrest and his first trial violated his speedy trial rights. We disagree.
 {¶ 8} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution. These speedy trial rights are essentially equivalent. Statev. Butler (1969), 19 Ohio St.2d 55, 57. Ohio also has statutory provisions to ensure that a criminal defendant receives a speedy trial. R.C. 2945.71 et seq. R.C. 2945.71(C)(2) requires a criminal defendant against whom a felony charge is pending to be brought to trial within 270 days from his arrest. Each day such a defendant spends in jail solely on the pending charges counts as three days for purposes of the 270-day limit. Id. at (E). Therefore, a criminal defendant in jail solely on the pending felony charges must be brought to trial within 90 days of arrest. The day of arrest is not included when computing the time within which a defendant must be brought to trial. State v. Jones (1997),119 Ohio App.3d 59, 64, fn. 7.
 {¶ 9} Appellant was arrested on October 22, 2002 and remained in jail solely on those charges until his first trial date of July 31, 2003, a total of 283 days. However, a motion for a bill of particulars tolls the speedy trial clock until the state responds. State v. Brown,98 Ohio St.3d 121, 2002-Ohio-7040, syllabus. Appellant requested a bill of particulars on November 19, 2002, and the state filed a bill of particulars on December 5, 2002. Therefore, those 16 days do not count in the speedy trial calculation. Additionally, reasonable continuances agreed to by counsel, even over the defendant's objection, also toll the speedy trial clock. State v. Wade, Franklin App. No. 03AP-774, 2004-Ohio-3974, at ¶ 13; State v. Eager (May 2, 1996), Franklin App. No. 95APA09-1165. Although appellant objected to the multiple continuances of his trial date, appellant's counsel agreed to all five of the continuances. The length of the continuances and the reasons asserted for the continuances were not unreasonable. Therefore, the 191 days of continuances from the originally scheduled trial date until the first trial date also do not count in the speedy trial calculation. Subtracting these periods of time from the speedy trial calculation, appellant is left with 28 days after he was arrested and before his motion for a bill of particulars was filed, and 48 days between the filing of the bill of particulars and the first continuance — a total of 76 days. This time frame does not constitute a violation of appellant's statutory speedy trial rights. R.C. 2945.71.
 {¶ 10} Having found that appellant's statutory right to a speedy trial was not violated, we must next address whether his constitutional right to a speedy trial was violated. In Barker v. Wingo (1972), 407 U.S. 514,530, 92 S.Ct. 2182, the United States Supreme Court set forth four factors to consider when evaluating whether an appellant's right to a speedy trial was violated: (1) whether the delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for the delay; (3) whether in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay. The Supreme Court of Ohio has also adopted this test to determine if an individual's constitutional speedy trial rights have been violated. State v. Selvage (1997), 80 Ohio St.3d 465; State v.Boyer (Dec. 27, 1994), Franklin App. No. 94APA06-938.
 {¶ 11} The first of these factors, the length of the delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, supra, at 530; see, also, Doggett v. United States (1992), 505 U.S. 647, 651, 112 S.Ct. 2686. Therefore, the Barker analysis is only triggered once a "presumptively prejudicial" delay is shown. Id. at 651-652; State v. Page, Fairfield App. No. 02 CA 69, 2003-Ohio-3856, at ¶ 10; State v. Yuen, Franklin App. No. 03AP-513, 2004-Ohio-1276, at ¶ 10.
 {¶ 12} We do not find the delay of 76 days in this case to be presumptively prejudicial. "[C]ourts have generally found postaccusation delay `presumptively prejudicial' at least as it approaches one year."Dogett, supra, at fn. 1; State v. Bayless, Franklin App. No. 02AP-215, 2002-Ohio-5791, at ¶ 33. Courts also have found delays longer than 76 days not to be presumptively prejudicial. State v. Harrel (Dec. 29, 1998), Delaware App. No. 98CAA06029 (delay of four to five months, not presumptively prejudicial); State v. Webb, Washington App. No. 01CA32, 2002-Ohio-3552, at ¶ 26 (delay of 186 days, not presumptively prejudicial); State v. Pinson (Mar. 16, 2001), Scioto App. No. 00CA2713 (delay of six and one-half months, not presumptively prejudicial); Statev. Carter (Apr. 1, 1998), Lorain App. No. 97CA006703 (delay of nine months, not presumptively prejudicial). In fact, this court previously has noted that a delay of 148 days is not presumptively prejudicial.State v. Billups (Aug. 15, 1991), Franklin App. No. 91AP-68. Accordingly, we determine that the 76-day delay in this case is not presumptively prejudicial. Because appellant has not made the threshold showing that there was a presumptively prejudicial delay, we need not weigh the remaining Barker factors. Harrel and Webb, supra.
 {¶ 13} Accordingly, because appellant's statutory and constitutional speedy trial rights were not violated, the trial court did not err when it denied his motion to dismiss. Appellant's third assignment of error is overruled.
 {¶ 14} Appellant contends in his first assignment of error that his robbery and assault convictions arising out of the Big Bear incident were not supported by sufficient evidence and were against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, each standard will be separately delineated.
 {¶ 15} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 16} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, supra, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484; Jenks, supra, at 273.
 {¶ 17} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 18} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v.Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; Statev. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 19} Appellant was convicted of two counts of robbery in violation of R.C. 2911.02(A)(2) and (3). In order to be convicted of these counts, the state had to prove beyond a reasonable doubt that appellant, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, inflicted, attempted to inflict, or threatened to inflict physical harm on another (R.C. 2911.02[A][2]), and that he used or threatened the immediate use of force against another (R.C.2911.02[A][3]). These charges arose from appellant's alleged use of force against Rick Masterson, one of the Big Bear employees who held appellant down at the store.
 {¶ 20} Appellant does not contest that he used force against Masterson or that he inflicted physical harm on him. Rather, appellant contends there was insufficient evidence for a jury to have found that he was attempting to commit or committing a theft offense. We disagree. Damon Peaks testified that appellant was walking toward the exit doors, without going through the cashier lanes, with two plastic bags filled with meat. Appellant admitted that on the day in question, he put the meat into plastic bags while he was in the store to make it look like he had already gone through the check-out lane. He then avoided the check-out lanes and walked toward the exit doors. Appellant essentially acknowledged that he intended to steal from the store but the store employees prevented him from leaving. Viewing appellant's testimony in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that appellant was committing or attempting to commit a theft offense when he used force against Masterson and inflicted physical harm by biting Masterson. Accordingly, appellant's robbery convictions were supported by sufficient evidence.
 {¶ 21} Similarly, we cannot say that the jury's findings were against the manifest weight of the evidence. Appellant admitted that he has previously stolen meat from grocery stores and further admitted that on the night in question, he placed the meat in plastic bags to make it appear that he had paid for the items. He also admitted that he purposely avoided the check-out lanes and went to the exit doors. When he was approached by Big Bear employees, he dropped the bags of meat and tried to leave the store. He was apprehended by store employees who held him down until the police arrived. While he was being held down, Damon Peaks testified that he saw appellant bite Masterson's finger, causing it to bleed. Officer Orick testified that he saw blood on someone's hand and on the floor when he approached the scene. Given this testimony, we cannot say that this is an exceptional case in which the evidence weighs heavily against the convictions. The jury did not clearly lose its way when it convicted appellant of robbery.
 {¶ 22} Appellant also contends that his assault conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. In order to find appellant guilty of assault, a jury must find beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to Officer Orick. R.C. 2903.13(A).[1]
 {¶ 23} Officer Orick testified that appellant was being held down by Big Bear employees as he entered the store. As Officer Orick grabbed appellant's arm to place him in handcuffs, appellant attempted to bite him. This testimony, viewed in the light most favorable to the state, is sufficient to prove that appellant knowingly attempted to cause physical harm to Officer Orick.
 {¶ 24} Although appellant testified that he did not try to bite Officer Orick, inconsistent testimony does not make a conviction against the manifest weight of the evidence. State v. Pruitt, Trumbull App. No. 2001-T-0101, 2003-Ohio-1882, at ¶ 40. The trier of fact is free to believe or disbelieve all or any of the testimony. Jackson and Sheppard,
supra. Given the conflicting testimony presented, the jury did not clearly lose its way when it rejected appellant's testimony. Moreover, appellant admitted he was high on drugs and alcohol at the time of the incident and that he could not specifically remember whether or not he tried to bite the officer. Therefore, we cannot say that this is an exceptional case in which the evidence weighs heavily against the conviction. The jury did not clearly lose its way when it convicted appellant of assault.
 {¶ 25} Having found appellant's robbery and assault convictions supported by sufficient evidence and not against the manifest weight of the evidence, appellant's first assignment of error is overruled.
 {¶ 26} Finally, in his second assignment of error, appellant contends the trial court erroneously imposed consecutive sentences. The state concedes the trial court did not comply with the statutory sentencing requirements to impose consecutive sentences because the trial court failed to make the findings required by R.C. 2929.14(E)(4). Upon a review of the sentencing hearing, we agree. Accordingly, appellant's second assignment of error is sustained, and the matter is remanded to the trial court for resentencing in compliance with the applicable statutory sentencing requirements.
 {¶ 27} In conclusion, appellant's first and third assignments of error are overruled, and appellant's second assignment of error is sustained. The judgments of the Franklin County Court of Common Pleas are affirmed in part and reversed in part, and the matter is remanded for resentencing in accordance with the applicable statutory guidelines.
Judgments affirmed in part and reversed in part; and cause remanded.
Brown, P.J., and Bryant, J., concur.
[1] While normally a misdemeanor of the first degree, an assault on a peace officer is a felony of the fourth degree. R.C. 2903.13(C)(3).