JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by B.B.[1] from an order by Juvenile Court Judge Janet Burney adjudicating him delinquent on charges that, if committed by an adult, would have constituted two counts of felonious assault, with peace officer specifications; one count of receiving stolen property; and one count of failure to comply with an order of a police officer. He claims that the State presented insufficient evidence to support the finding of his delinquency beyond a reasonable doubt on each of the charges, and that the judge's findings were against the manifest weight of the evidence. We affirm.
 {¶ 2} From the record we glean the following: On the morning of August 5th, 2002, Cleveland Police Officers Robert Mason and Marvin Young were in a zone car on general patrol. At about 2:16 a.m., Officer Mason interviewed a woman who claimed her 1983 Oldsmobile Cutlass, with a temporary license tag, had been stolen from her apartment parking lot by two males. Shortly before 4:00 a.m., at East 50th Street and Woodland Avenue, they observed two males in a similar Cutlass with the identical license tag, and a "punched out" trunk lock.
 {¶ 3} The officers radioed for assistance and did not activate their overhead lights or siren. They followed the Cutlass on Woodland and were joined by two zone cars. The caravan turned right onto East 55th with the Cutlass in the middle of the three southbound lanes and when it stopped for the traffic light at Grand Avenue, Officer Young drove around it on the left, activated his overhead lights, and stopped his car at a diagonal to partially block the middle lane. A second zone car stopped behind the Cutlass, and the third stopped next to it in the curb lane.
 {¶ 4} Officer Mason claimed that when he got out of the zone car to approach the suspects, the Cutlass was driven directly at him and he turned and jumped back into his car. Officer Young stated that he drove the zone car forward to get away from the Cutlass because its front bumper was touching the open front passenger door of the zone car. He sped up, therefore, to get in front of it. About fifty yards from the intersection, Officer Young stopped his car and said he saw the Cutlass slow down and then increase its speed until it collided with the right rear of his car. Both Officers Mason and Young claimed that the driver of the Cutlass tried to reverse and back away but could not because the front of the Cutlass was wedged under the right rear/side of their car.
 {¶ 5} With weapons drawn, the Officers from all three zone cars approached the Cutlass. The driver, identified as B.B., then age seventeen years, was taken into custody. Officer Mason stated he saw that the Cutlass had a "peeled column," indicating that the steering column was damaged so that the ignition system could be operated without a key. Both Officers stated that, as a result of the rear-end collision, each sustained soft tissue injuries and received medical attention that day. Officer Young claimed that he was unable to work for approximately four weeks because of his injuries.
 {¶ 6} B.B. was charged with delinquency for engaging in conduct which would constitute the following offenses if committed by an adult: two counts of felonious assault of a police officer;[2] one count of receiving stolen property;[3] and one count of failure to comply,[4]
by failing to stop the Cutlass after Officer Young activated his zone car's overhead lights as a signal to do so, and additionally by operating a motor vehicle in such a way as to cause substantial risk of serious physical harm.
 {¶ 7} Testifying in his own defense, B.B. claimed that "some dude named Steve," had given him the Cutlass and that when he got it, the steering column had already been "peeled" and the car was running. He said that his passenger was an acquaintance he knew as "William," that he drove the Cutlass southbound on East 55th Street, stopped at the traffic signal at Grand Avenue and, when the light turned green, he began to proceed on East 55th Street, when a police car swerved in front of him with its overhead lights on. He claimed that everything happened so fast he could not stop before hitting the right rear quarter panel of the zone car, but the impact between the cars was extremely minimal.
 {¶ 8} He described how he was wrenched out of the car and thrown on the ground, injuring his chin, how unidentified officers punched him in the face twice, how he was thrown onto the hood of a zone car, how his face was pressed against its extremely hot metal, and how his middle finger of his left hand was broken as an unidentified officer handcuffed him. He said he was taken to St. Vincent Charity Hospital for injuries including a cut on his chin and an abrasion on his cheek. The medical records he introduced at trial contained a notation that his injuries were caused when he "fell," while "running from police," but did not note any injury or treatment to his hands.
 {¶ 9} The judge found that the State had presented sufficient evidence to establish B.B.'s commission of each offense as charged beyond a reasonable doubt. She adjudicated him delinquent, and later ordered him committed to the custody of the Ohio Department of Youth Services for a minimum term of one year, with the maximum term being his attainment of the age of twenty-one years.
 {¶ 10} He asserts two assignments of error set forth in Appendix A.
I. SUFFICIENCY OF THE EVIDENCE
 {¶ 11} B.B. contends that the judge erred in finding that the State presented sufficient evidence to establish his commission of each offense charged, beyond a reasonable doubt. Whether the evidence is legally sufficient to sustain a verdict is a question of law.[5] Under Crim.R. 29,
"The court on motion of the defendant or on its own motion, after theevidence on either side is closed, shall order the entry of a judgment ofacquittal of one or more offenses charged in the indictment,information, or complaint, if the evidence is insufficient to sustain aconviction on such offense or offenses. * * *"
 {¶ 12} Whether phrased in terms of a Crim.R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[6] The elements of an offense may be established by direct evidence, circumstantial evidence, or both.[7] Circumstantial and direct evidence are of equal probative value.[8] When reviewing the value of circumstantial evidence, we note that "the weight accorded an inference is fact-dependent and can be disregarded as speculative only if reasonable minds can come to the conclusion that the inference is not supported by the evidence."[9]
 {¶ 13} R.C. 2903.11(A)(2), in relevant part, describes the offense of felonious assault as knowingly "[c]aus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of certain nature, and a person has knowledge of circumstances when he is aware that such circumstances probably exist.[10] A deadly weapon includes "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or * * * used as a weapon."[11] The adult offense of felonious assault, normally a felony of the second degree,[12] is punishable as a felony of the first degree if it is alleged and proven beyond a reasonable doubt that the victim of the offense is a "peace officer," as defined in R.C.2935.01.[13]
 {¶ 14} It is well established under R.C. 2923.11, that an automobile can be classified as a deadly weapon when used in a manner likely to produce death or great bodily harm.[14] In determining whether an automobile is used as a deadly weapon, a finder of fact should not only consider the intent and mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or serious bodily injury.[15] The question of whether an automobile is used as a deadly weapon is a question of fact for the trier of fact.[16]
 {¶ 15} B.B. contends that the testimony of Officers Young and Mason was inconsistent and suspect, and did not provide the judge with a basis to find that he knowingly used the Cutlass as a deadly weapon because each differed over whether he was left with an escape route when he was stopped. He submits that the officers' testimony was fabricated in a purposeful attempt to provide justification for the beating he was given when he was arrested.
 {¶ 16} Officer Mason had testified, however, that B.B. drove the Cutlass directly at him when he got out of his zone car, although it was stopped at an angle in front of it. He unambiguously stated that if B.B. had wanted to escape, he could have veered the Cutlass to the right and avoided his zone car altogether, but he did not. He drove directly at the zone car. Officer Young testified that, before ultimately speeding up and ramming the back of his zone car, the Cutlass appeared to slow down. Each officer testified that they drove away from the Grand Avenue intersection to avoid being hit by the Cutlass and that it came to a stop only after it rammed their zone car, causing them personal injuries.
 {¶ 17} This testimony, viewed in a light most favorable to the State, if believed, would provide clear circumstantial support for a factual finding that B.B. knowingly attempted to cause, and did cause, physical harm to both officers, by using the Cutlass as a deadly weapon. There has been no dispute that Officers Mason and Young were uniformed members of the City of Cleveland Police Department on active duty on August 5, 2002, and so it is clear that the peace officer specifications attached to each count of felonious assault had been irrefutably proven at trial.[17] The State presented sufficient evidence to establish the commission of two felonious assaults against police officers.
 {¶ 18} B.B. also contests the finding that he committed the offense of receiving stolen property on sufficiency grounds. Under R.C.2913.51(A), "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Where the property at issue is a motor vehicle, the adult offense of receiving stolen property is a felony of the fourth degree.[18]
 {¶ 19} In a prosecution for receiving stolen property, a finder of fact may determine guilt by inference when the accused's possession of recently stolen property is not satisfactorily explained in light of surrounding circumstances developed from the evidence.[19] When determining whether a defendant had knowledge that property in his possession had been stolen, appellate courts look to the following factors: "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise."[20]
 {¶ 20} B.B. contends, without reference to any legal authority, that the State did not establish at trial that the Cutlass B.B. was driving was stolen because its owner never testified to that fact. We have ruled, however, that it is not always necessary for an owner of an automobile to testify to establish that the vehicle was stolen.[21] The relevant inquiry concerns not who owned the item alleged to have been stolen, but whether a defendant rightfully possessed it.[22]
 {¶ 21} Without objection, the judge heard evidence that the woman who claimed to own the Cutlass told Officer Mason in the early hours of August 5, 2002, that her car had been stolen that night by two men; she described it and provided the number of its temporary license tag. There was the evidence of Officers Mason and Young that B.B. was driving a car that was an exact match with the woman's Cutlass, and had a "punched out" trunk lock. B.B. asserted the car, with a "peeled column" and running without an ignition key, was a gift from someone he could not or would not specifically identify.
 {¶ 22} We note that the Ohio Supreme Court has held that a defendant's flight can constitute evidence of consciousness of guilt and of guilt itself.[23] If believed, the testimony of the officers established that B.B. attempted to elude the police.
 {¶ 23} Whether the State had properly introduced evidence that the Cutlass was stolen was not a part of B.B.'s Crim.R. 29 motion at trial, and he waived evidentiary issues through lack of appropriate objections to any of the State's evidence establishing the fact that the car had been reported stolen. Given B.B.'s unconvincing and incomplete explanation of how the car had come into his possession, the evidence presented at trial supported the judge's conclusion that the State had proven, beyond a reasonable doubt, that the Cutlass was stolen and B.B. knew this fact, or should have known it, when he took possession of the car.
 {¶ 24} B.B. contends that there was insufficient evidence to prove the failure to comply count. R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." This offense, normally, if committed by an adult, is punishable as a misdemeanor of the first degree.[24] If the State establishes that a defendant was fleeing a police officer in an automobile and the defendant operates that automobile in such a way as to present a risk of serious physical harm to persons or property, the offense is punishable as a felony of the third degree.[25]
Ohio appellate case law uniformly holds that a police officer's activation of the overhead lights and/or siren of a marked police car provides a sufficient signal communicating to a driver that he is being ordered to stop his car.[26] Our research has yielded no case law indicating that such signals are insufficient to place a driver on notice that he is being ordered to stop his car.
 {¶ 25} B.B. asserts that no evidence demonstrated that a car chase occurred and that the Cutlass came to rest "only fifty yards" from where it had been when Officer Young activated the overhead lights of his zone car. He claimed he stopped the Cutlass as quickly as he could once he saw the zone car, with its lights activated, pulling in front of him.
 {¶ 26} In evaluating a challenge to the sufficiency of the evidence, however, we must construe the evidence in a light most favorable to the State. Here there was testimony that, after the zone car lights were activated, B.B. attempted to collide with Officer Mason or the zone car, drove away and only stopped about fifty yards away because the Cutlass, with wheels still spinning in reverse, had become entangled as a result of a subsequent collision. There was sufficient evidence to support this count.
MANIFEST WEIGHT OF THE EVIDENCE — DELINQUENCY
 {¶ 27} B.B. maintains that the judge's finding of delinquency was against the manifest weight of the evidence. In evaluating a manifest weight challenge, this court sits as a thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a factfinder which has "lost its way."[27] This power is subject to strict and narrow constraints.
"Weight of the evidence concerns `the inclination of the greater amountof credible evidence, offered in a trial, to support one side of theissue rather than the other. It indicates clearly to the [finders offact] that the party having the burden of proof will be entitled to theirverdict, if, on weighing the evidence in their minds, they shall find thegreater amount of credible evidence sustains the issue which is to beestablished before them. Weight is not a question of mathematics, butdepends on its effect in inducing belief.'" * * *
 "The court, reviewing the entire record, weighs the evidence and allreasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the [finder offact] clearly lost its way and created such a manifest miscarriage ofjustice that the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction."[28]
 {¶ 28} Even so, in the first instance, determinations of witness' credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.[29]
 {¶ 29} B.B. argues on appeal that the officers' testimony was obviously concocted to justify the excessive force used when he was taken into custody. As he asserted at trial, he submits that the officers' story was an obvious fabrication because the State introduced no photographs to substantiate any damage to the zone car or medical records supporting the officers' claimed injuries. Additionally, he places great significance on the fact that neither officer could describe in any real detail the property damage sustained by the zone car, and the fact that they did not see the manner in which he claims he was beaten when other officers arrested him. He further points to what he characterizes as inconsistencies in the officers' testimony. He argues that, in some instances, they seem to describe the Cutlass as being completely surrounded with no way to escape when he was stopped, and, in others, they claim that he had a clear escape route which he chose not to use, and attempted to hit Officer Mason instead.
 {¶ 30} The State counters that the officers did not closely examine their zone car for damage because they were quickly transported for medical attention. The officers also claimed they did not see B.B. taken into custody because they were busy securing the other suspect on the passenger side of the Cutlass.
 {¶ 31} In this case, it is clear that any decision the judge made was based on her evaluation of the credibility of the witnesses who testified. Judging the witnesses' respective demeanor, appearance, and truthfulness, she gave credence to the testimony of the officers and largely disregarded that of B.B., who never satisfactorily explained why he was driving an obviously stolen car at approximately 4:00 a.m., August 5, 2002. Because the versions of events presented by the State and B.B. were so diametrically opposed in almost all relevant respects, we are unwilling to simply choose B.B.'s version, as he would have us do, based on the review of a cold, paper record. We cannot say that the judge lost her way in rendering her findings, with the end result being a manifest miscarriage of justice. Accordingly, we find no merit to this assignment of error.
Judgment affirmed.
 {¶ 32} Appendix A: B.B.'s assignments of error as stated in his merit brief to this court.
 {¶ 33} "I. The evidence is insufficient to support a judgment of conviction.
The evidence is insufficient to support a conviction for receiving stolen property because the state failed to present proof, through the testimony of the owner or the person in possession, that the vehicle described in the complaint was, in fact, stolen.
The evidence is insufficient to support a conviction for felonious assault because there was no evidence from which any rational trier of fact could have found that appellant knowingly caused or attempted to cause physical harm to the alleged victims.
The evidence is insufficient to support a conviction for failure to comply because there was no evidence from which any rational trier of fact could have found that appellant willfully eluded or fled after receiving a visible or audible signal from a police officer to bring his vehicle to a stop."
 {¶ 34} "II. The adjudication of delinquency is against the manifest weight of the evidence."
Kenneth A. Rocco, A.J., and Diane Karpinski, J., Concur
[1] This court protects the identity of all parties in Juvenile Court cases.
[2] R.C. 2903.11(A)(2) and (D).
[3] R.C. 2913.51.
[4] R.C. 2921.331(B).
[5] State v. Robinson (1955), 162 Ohio St. 486.
[6] See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52; State v.Jenks (1991), 61 Ohio St.3d 259.
[7] See State v. Durr (1991), 58 Ohio St.3d 86.
[8] See State v. Jenks (1991), 61 Ohio St.3d 259, 272 ("Circumstantial evidence and direct evidence inherently possess the same probative value [and] in some instances certain facts can only be established by circumstantial evidence.")
[9] Wesley v. The McAlpin Co. (May 25, 1994), 1st Dist. No. C-930286, citing Donaldson v. Northern Trading Co. (1992), 82 Ohio App.3d 476,483.
[10] R.C. 2901.22(B).
[11] R.C. 2923.11(A).
[12] R.C. 2903.11(B).
[13] Id.
[14] State v. Kilton, Cuyahoga App. No. 80837, 2003-Ohio-423, citingState v. Prince (Nov. 19, 1992), Cuyahoga App. No. 61342.
[15] Id., citing State v. Upham (May 12, 1997), Butler App. No. CA96-08-157.
[16] State v. Upham, supra, State v. Gimenez (Sept. 4, 1997), Cuyahoga App. No. 71190.
[17] Insofar as the police officer specification is concerned, "peace officer" is defined in R.C. 2903.13(C)(4)(a), by reference to R.C. 2935.01, as a "member of the organized police department of any municipal corporation."
[18] R.C. 2913.51(C).
[19] State v. Arthur (1975), 42 Ohio St.2d 67.
[20] State v. Allen, Stark App. No. 2002CA00059, 2003-Ohio-229, Statev. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333, appeal denied,98 Ohio St.3d 1515, 2003 Ohio 1572, both citing State v. Davis (1988),49 Ohio App.3d 109, 112, 550 N.E.2d 966.
[21] In Re Houston (Nov. 25, 1998), Cuyahoga App. No. 73950.
[22] State v. Rhodes (1982), 2 Ohio St.3d 74, 76 ("* * * [I]t is the defendant's lawful right to possession which is key for purposes of the theft offense and R.C. 2913.01(D).")
[23] State v. Williams (1997), 79 Ohio St.3d 1, 11, State v. Taylor
(1997), 78 Ohio St.3d 15, 27.
[24] R.C. 2921.331(C)(3).
[25] R.C. 2921.331(C)(5)(a)(I).
[26] E.g., State v. Gayles, Stark App. No. 2002CA00412,2003-Ohio-3418, State v. Franklin, Cuyahoga App. No. 81426,2003-Ohio-2649, State v. Everitt, Warren App. No. CA2002-07-070,2003-Ohio-2554, State v. Bailey, Cuyahoga App. No. 81498,2003-Ohio-1834, State v. Sheets, Athens App. No. 02CA15, 2002-Ohio-6423,State v. Twitty, Montgomery App. No. 18749, 2002-Ohio-5595.
[27] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
[28] State v. Thompkins, supra at 387, 1997-Ohio-52 (internal cites omitted).
[29] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.