[Cite as *State v. Solt*, 2023-Ohio-2779.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                           :

    Plaintiff-Appellee,          :

                                     No. 22AP-419

v.                                       :           (C.P.C. No. 20CR-3355)

Jane Solt,                               :           (REGULAR CALENDAR)

    Defendant-Appellant.         :

---

D E C I S I O N

Rendered on August 10, 2023

---

**On brief:** *Dave Yost*, Attorney General, *Shantelle A. Valentine*, and *Robin A. Loughrin*, for appellee. **Argued:** *Shantelle A. Valentine.*

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Jane Solt, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a bench trial verdict finding her guilty of one count of tampering with records. Because the trial court erred by conducting a bench trial without a signed written waiver of Solt's right to a jury trial, we reverse the conviction and sentence.

## I. Facts and Procedural History

{¶ 2} Solt was the Director of Nursing at Whetstone Gardens and Care Center ("Whetstone Gardens") during 2016. As part of an investigation undertaken in 2017, the Ohio Attorney General's office subpoenaed records from Whetstone Gardens and

MacIntosh Management Company, LLC ("MacIntosh").[1] Those records included certain e-mails sent and received by Solt. As a result of the investigation, criminal charges were filed against Solt related to her statements and actions regarding three incidents that occurred at Whetstone Gardens: (1) a February 2016 claim by resident Cozie Floyd that money was missing from her room ("the Floyd incident"), (2) a July 2016 claim by resident Rebecca Groves that she did not timely receive pain medication ("the Groves incident"), and (3) an October 2016 claim by resident Sterling Johnson that money was missing from his room ("the Johnson incident"). Solt was indicted on one count of tampering with records related to the Floyd incident, one count of tampering with records related to the Johnson incident, and one count of tampering with records and one count of tampering with evidence related to the Groves incident. All the charges were third-degree felony offenses. The common pleas court held a bench trial on the charges on February 28 and March 1, 2022.

{¶ 3} The charges related to the Floyd incident and the Johnson incident involved statements Solt made in self-reported incident forms ("SRI forms") filed with the Ohio Department of Health ("ODH"). James Hodge, who was the assistant chief of the Bureau of Regulatory Operations at ODH in 2016 and supervised the program in charge of administrative investigations of claims of abuse, neglect, and misappropriation, testified regarding the function of SRI forms. Hodge explained that when a nursing home became aware of a claim of abuse, neglect, misappropriation, or exploitation, the facility was required to file an SRI form reporting that allegation to ODH within 24 hours. The facility was then required to conduct an internal investigation of the allegation and within five days file a final SRI form setting forth the facility's determination of what occurred, whether the claim was substantiated or unsubstantiated, and what steps the facility had taken. With regard to misappropriation claims, Hodge explained that if a facility determined based on its internal investigation that a misappropriation had occurred, it would report the allegation as substantiated; if the facility was uncertain whether a misappropriation occurred, it would report the allegation as unsubstantiated. Hodge testified that

---

[1] We note that the precise relationship between Whetstone Gardens and MacIntosh is not clear from the record before the court. An investigator from the Ohio Attorney General's Office referred to MacIntosh at trial as "the corporate company for Whetstone." (Tr. Vol. I at 85.) In her brief on appeal, however, Solt refers to MacIntosh as "an external management consultant retained by Whetstone to advise its employees on regulatory matters." (Appellant's Brief at 5.)

misappropriation is theft of an individual's property in a nursing home or residential care facility.

**{¶ 4}** Hodge reviewed all SRI forms submitted by facilities and recommended whether ODH should open an administrative investigation. Hodge asserted ODH could investigate an incident regardless of whether the facility reported an allegation as substantiated or unsubstantiated. However, he testified that ODH "would be less inclined" to investigate a misappropriation claim if the facility's investigation indicated that money had been misplaced and later found and returned to the resident. (Tr. Vol. I at 29.) Hodge asserted he would have reviewed the SRI forms that Solt submitted on behalf of Whetstone Gardens related to the Floyd incident and the Johnson incident, and would have relied on the information in those SRI forms when determining whether ODH should investigate. Hodge explained that ODH was not likely to investigate if a facility located money that a resident had reported as missing:

> It is pretty well known if it is a misunderstanding, or if the money is found and identified that, for example a resident is confused or something like that * * * probably it is known that we would not open an investigation on that matter.

(Tr. Vol. I at 45.) Hodge testified that if a resident's money went missing and the facility made the resident whole by reimbursing the resident, ODH "would still investigate and take administrative action to that individual for misappropriation of property against a resident." (Tr. Vol. I at 48.)

**{¶ 5}** Special Agent Aubrey Cook of the Healthcare Fraud Section of the Ohio Attorney General's Office investigated Whetstone Gardens' response to the Floyd incident, the Groves incident, and the Johnson incident. As Director of Nursing, Solt was involved in preparing Whetstone Gardens' response to each of the incidents.

**{¶ 6}** The Floyd incident began on February 5, 2016 when Solt was notified money was missing from Floyd's room. That day, Solt e-mailed Corporate Director of Nursing Services for MacIntosh Sharon Fenton to advise her that a police report was being filed because Floyd's niece was "making a fuss." (State's Ex. T.) Solt filed an initial SRI form for the Floyd incident on the evening of February 5, 2016. On February 10, 2016, during the investigatory period, the Chief Operating Officer for MacIntosh John Dunn inquired about the status of the SRI form. Solt advised Dunn "[w]e searched again without success" and

that she was unsure how to proceed "as I don't want to substantiate it." (State's Ex. U.) Solt requested guidance from Dunn, noting that Greg Carnes, the administrator at Whetstone Gardens, "stated he didn't feel the center was responsible to reimburse" Floyd. (State's Ex. U.) At 1:14 p.m. on February 11, 2016, Solt e-mailed a written summary of the Floyd incident to Carnes. In that e-mail, Solt stated "[a]though we are replacing the money I don't think we should disclose that in the SRI." (State's Ex. V.) Solt further stated "I truly believe it is in her room somewhere and that is the scenario I went with." (State's Ex. V.)

{¶ 7} Solt filed the final SRI form related to the Floyd incident at 3:03 p.m. on February 11, 2016. In the final SRI form, Solt indicated Floyd's misappropriation claim was unsubstantiated, and that the evidence indicated no misappropriation occurred. Solt provided an incident summary in the final SRI form, asserting that on the day the money was reported missing, facility staff searched Floyd's room with her permission and found "money in various old utility envelopes throughout the room accounting for half of [the] alleged missing funds." (State's Ex. C2.) Solt further asserted that during a second search on February 10, 2016, "the remaining balance of funds were [sic] recovered in various correspondence envelopes throughout the room, as this resident saves all mail delivered to her." (State's Ex. C2.) At trial, the state introduced a copy of a petty cash summary log indicating $146 for "Resident Funds Replaced (Cozie Floyd)" on February 12, 2016. (State's Ex. KK.) The state also introduced a copy of a handwritten receipt for $146 for "Resident Replacement of funds" on February 11, 2016, although the signature of the receiving party is illegible. (State's Ex. LL.)

{¶ 8} The Groves incident occurred when Groves was admitted to Whetstone Gardens on July 15, 2016. On July 25, 2016, Groves told an ODH surveyor that she did not receive pain medication or tube feeding at the scheduled times after being admitted to Whetstone Gardens. ODH concluded Whetstone Gardens failed to ensure timely administration of pain medication to Groves. Cook testified that ODH issued a "G-level deficiency" involving harm or potential harm to a resident and a civil monetary penalty, and that Whetstone Gardens sought to dispute the citation. (Tr. Vol. I at 145.) Cook investigated Solt's actions in preparing Whetstone Gardens' response to the ODH citation.

{¶ 9} Fenton directed Solt to "start gathering info for the argument against ODH" and indicated Whetstone Gardens would challenge the citation (State's Ex. Z.) On

August 5, 2016, Solt requested that the doctor who examined Groves after she was admitted prepare an addendum to his original note indicating the time he examined Groves and that she was not in pain at the time of the examination. (State's Ex. DD-2.) In the request, Solt indicated "the later the better" regarding the time of the examination. (State's Ex. DD-2.) When the doctor responded that he was unsure of the time he examined Groves and that it was later in the evening after she was admitted, Solt responded "[w]e are actually hoping that you saw her later in the evening." (State's Ex. DD4.) When the doctor asked whether a time around 8:00 p.m. was acceptable, Solt responded that was "[p]erfect." (State's Ex. EE.) The doctor then submitted a message indicating he had examined Groves "around 7-8pm" on July 15, 2016, and that she was not in any discomfort aside from mild pain around a recently placed feeding tube. (State's Ex. GG-2.) Cook testified this report was submitted to ODH as part of Whetstone Gardens' response to the citation. After Whetstone Gardens submitted a plan of corrections to ODH and a subsequent post-survey visit by ODH, Whetstone Gardens was advised that it was in compliance as of August 30, 2016.

{¶ 10} The Johnson incident began on October 27, 2016, when Solt was notified that $500 was missing from Johnson's room. An assistant administrator confirmed that a family friend had brought $500 to Johnson and that it had been hidden in a bag in the closet of his room. On the evening of October 27, 2016, the family friend verified that the money was not where it had been left. Solt filed an initial SRI form for the Johnson incident on October 28, 2016.

{¶ 11} Solt e-mailed Fenton a draft incident summary to be included in the final SRI form on the afternoon of November 1, 2016. In the draft summary, Solt stated the money had been found in Johnson's room. Solt filed the final SRI form for the Johnson incident with ODH later the same day; in the final SRI form, Solt indicated Johnson's misappropriation claim was unsubstantiated, and that the evidence indicated no misappropriation occurred. The incident summary contained in the final SRI form stated "the money was located in the laundry in the dirty clothes as laundry was being sorted." (State's Ex. D2.) Cook opined that the statement in the final SRI form that Johnson's money had been found in the laundry was "a different version" of the story from the draft e-mail. (Tr. Vol. I at 101.)

{¶ 12} Solt did not testify at trial but presented testimony from four character witnesses who knew her personally or professionally. However, none of Solt's witnesses had worked with her at Whetstone Gardens or had personal knowledge of the incidents underlying the charges against her.

{¶ 13} The trial court found Solt guilty of the tampering with records charge related to the Floyd incident. The court concluded Solt falsified the final SRI form related to the Floyd incident with a purpose to defraud ODH, because she knew Floyd's money had not been recovered but informed ODH that there was no misappropriation. The trial court found Solt not guilty of the tampering with records charge related to the Johnson incident, concluding the state failed to prove that the discrepancy between the rough draft incident summary and the incident summary contained in the final SRI form demonstrated that Solt falsified the final SRI form. The trial court also found Solt not guilty of the tampering with records and tampering with evidence charges related to the Groves incident, concluding the state failed to prove beyond a reasonable doubt that Solt's communications with the examining physician implicitly encouraged him to falsify his records. Pursuant to the guilty verdict on the tampering with records charge related to the Floyd incident, the trial court imposed a 12-month period of community control.

## II. Assignments of Error

{¶ 14} Solt appeals and assigns the following three assignments of error for our review:

> [I.] DEFENDANT-APPELLANT'S CONVICTION FOR TAMPERING WITH RECORDS IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
>
> [II.] THE TRIAL JUDGE LOST HIS WAY WHEN HE CONFLATED THE ELEMENTS OF FALSIFYING A WRITING AND PURPOSE TO DEFRAUD, RESULTING IN A FINDING OF GUILTY OF TAMPERING WITH RECORDS THAT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [III.] THE TRIAL JUDGE LACKED AUTHORITY TO CONDUCT A BENCH TRIAL AND TO FIND DEFENDANT-APPELLANT GUILTY OF TAMPERING WITH RECORDS IN

THE ABSENCE OF A SIGNED JURY WAIVER CONFORMING WITH THE REQUIREMENTS OF R.C. 2945.05.

## III. Analysis

## A. Whether the trial court erred by conducting a bench trial

{¶ 15} Solt's third assignment of error challenges the trial court's authority to conduct the trial; therefore, we begin with it and will consider Solt's assignments of error in reverse order. In her third assignment of error, Solt asserts the trial court erred by conducting a bench trial because the record does not contain a signed written waiver of her right to a jury trial.

{¶ 16} The Sixth Amendment to the United States Constitution and Section 5, Article I of the Ohio Constitution guarantee the right to trial by jury in criminal cases. *State v. Banks*, 10th Dist. No. 18AP-808, 2019-Ohio-5440, ¶ 8. Crim.R. 23(A) provides that a defendant "may knowingly, intelligently and voluntarily waive in writing his right to trial by jury." A jury waiver must be "in writing, signed by the defendant, and filed in said cause and made a part of the record thereof" and "must be made in open court after the defendant has been arraigned and has had an opportunity to consult with counsel." R.C. 2945.05; *see also Banks* at ¶ 11, quoting *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, ¶ 11 (10th Dist.) (" 'The waiver must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court.' "). "Where the requirements of R.C. 2945.05 are not met, the court's exercise of jurisdiction is in error." *Columbus v. Memon*, 10th Dist. No. 09AP-38, 2009-Ohio-5124, ¶ 8.

{¶ 17} We note the Supreme Court of Ohio has held that "[i]n the absence of strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *State v. Pless*, 74 Ohio St.3d 333, 337 (1996). This court and other Ohio courts have often cited *Pless* in holding that a trial court lacked jurisdiction to conduct a bench trial where the requirements of R.C. 2945.05 were not met. *See, e.g., State v. Foster*, 1st Dist. No. C-210447, 2022-Ohio-1293, ¶ 6; *State v. Vonstein*, 12th Dist. No. CA2020-11-111, 2021-Ohio-2984, ¶ 10-11; *Banks* at ¶ 11; *State v. Graham*, 6th Dist. No. WD-18-017, 2018-Ohio-5003, ¶ 23; *Cleveland v. Krebs*, 8th Dist. No. 105814, 2018-Ohio-746, ¶ 20; *State v. Bell*, 2d Dist. No. 2017-CA-8, 2017-Ohio-7512, ¶ 9. However, a trial court conducting a bench trial without strictly complying with R.C. 2945.05 is more accurately characterized

as an erroneous exercise of jurisdiction. As the Supreme Court has explained "[t]he term [jurisdiction] encompasses jurisdiction over the subject matter and over the person," and "is also used when referring to a court's exercise of its jurisdiction over a particular case." *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11-12. Thus, as the court has recognized, "[t]here is a distinction between a court that lacks subject-matter jurisdiction over a case and a court that improperly exercises that subject-matter jurisdiction once conferred upon it." *Id*. at ¶ 10. Similarly, in its recent decisions addressing the distinction between void and voidable judgments, the court discussed improper exercise of jurisdiction by a court that has subject-matter and personal jurisdiction. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 34-37; *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 23-26. Consistent with these principles, when a trial court has subject-matter jurisdiction and personal jurisdiction, it erroneously exercises that jurisdiction by conducting a bench trial without complying with R.C. 2945.05. *See Pratts* at ¶ 26; *Memon* at ¶ 8; *State v. Van Dyne*, 5th Dist. No. 15CA26, 2016-Ohio-1476, ¶ 17; *State v. Nelson*, 10th Dist. No. 11AP-720, 2012-Ohio-1918, ¶ 8; *State v. Myers*, 9th Dist. No. 23508, 2007-Ohio-4134, ¶ 3-4.

{¶ 18} At the beginning of trial, the court sought verbal confirmation that Solt waived her right to a jury trial:

> THE COURT: [Defense counsel], will you confirm for me that your client has waived the jury for this matter?
>
> [Defense Counsel]: That is correct, Your Honor.

(Tr. Vol. I at 10.) Notwithstanding this verbal confirmation in open court, there is no signed written waiver of the right to a jury trial contained in the trial court record. Because the trial court did not strictly comply with the requirements of R.C. 2945.05, the trial court erroneously exercised its jurisdiction by trying Solt without a jury. Therefore, the conviction must be reversed.[2] *See Banks* at ¶ 30.

{¶ 19} Accordingly, we sustain Solt's third assignment of error.

---

[2] We note the state concedes the trial court lacked jurisdiction due to failure to comply with R.C. 2945.05 and that the judgment must be reversed.

**B. Whether the guilty verdict was against the manifest weight of the evidence**

{¶ 20} In her second assignment of error, Solt asserts her conviction was against the manifest weight of the evidence. This assignment of error is rendered moot by our conclusion that the trial court erroneously exercised its jurisdiction by conducting a bench trial without strictly complying with the requirements of R.C. 2945.05. *State v. Bentley*, 11th Dist. No. 2021-L-089, 2022-Ohio-1099, ¶ 17 ("Since we have determined that reversal is required due to the failure to comply with the requirements for waiving a jury trial, the manifest weight of the evidence issue is moot."); *State v. Johnson*, 5th Dist. No. 2016CA00119, 2017-Ohio-1251, ¶ 20 ("[A]ppellant's claim that the judgment is against the manifest weight is rendered moot by our conclusion that a new trial is required based on the court's failure to ascertain a proper jury waiver."); *see State v. Wade*, 10th Dist. No. 03AP-774, 2004-Ohio-3974, ¶ 30 (holding that manifest-weight challenge was rendered moot by conclusion that defendant's constitutional rights were violated by deficient procedure in responding to jury questions). Accordingly, we render moot Solt's second assignment of error.

**C. Whether there was sufficient evidence to support the guilty verdict**

{¶ 21} In her first assignment of error, Solt asserts her conviction was not supported by sufficient evidence. Unlike her manifest-weight challenge, Solt's sufficiency-of-the-evidence claim is not rendered moot by our conclusion that the trial court erred by conducting a bench trial. "[W]hen an appellate court reverses for insufficiency of the evidence, the Double Jeopardy Clause bars retrial." *Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, ¶ 10. Therefore, because the result may prevent a retrial, "[a]n assignment of error challenging the sufficiency of the evidence is potentially dispositive of a defendant's conviction and may not be rendered moot by a remand on any other assignment of error." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 2. *See Krebs* at ¶ 25 ("Although we vacated Krebs's failure to comply conviction and remanded for a new trial [due to lack of a signed, written jury waiver], we must still address the sufficiency of the evidence argument due to double jeopardy concerns."); *State v. Riggins*, 9th Dist. No. 28080, 2017-Ohio-80, ¶ 10, fn. 1 (noting that sufficiency challenge was not rendered moot despite conclusion that trial court erred by conducting bench trial without a written jury waiver).

{¶ 22} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In evaluating the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34. A verdict will not be reversed due to insufficient evidence unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Aekins*, 10th Dist. No. 21AP-630, 2023-Ohio-322, ¶ 71, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 23} Solt was convicted of tampering with records in violation of R.C. 2913.42(A)(1) and (B)(4). R.C. 2913.42(A)(1) provides that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." Under R.C. 2913.42(B)(4), "[i]f the writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity," tampering with records is a third-degree felony offense. "Defraud" is defined as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

{¶ 24} The trial court concluded Solt knowingly falsified the final SRI form related to the Floyd incident. The trial court found that ODH relies on the accuracy of SRI forms and concluded that because Solt falsified the SRI form, ODH did not investigate the Floyd incident. The trial court further concluded that "[w]hile it may well be that any such investigation would have reached the same conclusion, [Solt's] intentional lies thwarted that investigation from the outset." (Decision at 7.)

{¶ 25} In the final SRI form related to the Floyd incident, Solt reported that Floyd's claim was unsubstantiated and that the evidence indicated no misappropriation occurred. The incident summary contained in the final SRI form indicated that Whetstone Gardens staff "located money in various old utility envelopes throughout [Floyd's] room accounting for half of [the] alleged missing funds" during an initial search on February 5, 2016, the day Floyd's niece reported the missing money. (State's Ex. C-2.) The incident summary further

stated that during a second search on February 10, 2016, Whetstone Gardens staff found the rest of the missing money "in various correspondence envelopes throughout the room, as this resident saves all mail delivered to her." (State's Ex. C-2.)

{¶ 26} Contrary to the statements in the final SRI form, however, in an e-mail sent on the evening of February 10, 2016, Solt stated "[w]e searched again without success" and indicated she was unsure how to proceed because she "[did not] want to substantiate" the misappropriation claim. (State's Ex. U.) The following day, shortly before submitting the final SRI form to ODH, Solt e-mailed a draft summary to Carnes and stated "[a]lthough we are replacing the money I don't think we should disclose that in the SRI." (State's Ex. V.) She further stated, "I truly believe it is in her room somewhere and that is the scenario I went with." (State's Ex. V.) The state also introduced a petty cash summary log reflecting a payment to Floyd on February 12, 2016 with the description "resident funds replaced." (State's Ex. KK.)

{¶ 27} Viewed in the light most favorable to the prosecution, this evidence establishes that Solt's statement in the final SRI form that Floyd's money had been found during searches of her room was false. The SRI form is maintained by ODH and therefore the third-degree felony provision under R.C. 2913.42(B)(4) applies.

{¶ 28} On appeal, Solt asserts the evidence was insufficient to establish that she had a purpose to defraud or knowingly facilitated a fraud. Solt argues the state failed to prove she knowingly obtained a benefit to herself or another, or caused a detriment to another, through the statements contained in the final SRI form.

{¶ 29} The state asserted in its closing argument that Solt falsified the SRI form to avoid an investigation by ODH. Similarly, on appeal, the state argues the falsified final SRI form impeded ODH's ability to determine whether to investigate the misappropriation claim. Hodge testified ODH relied on the information contained in SRI forms when determining whether to investigate the claims. Although Hodge did not specifically recall determining not to investigate the Floyd incident, he testified that based on the assertion in the final SRI form that the money had been found in Floyd's room and other information in the incident summary, he would have decided not to open an investigation.

{¶ 30} Solt asserts that Hodge's testimony does not support a conclusion that Solt falsified the final SRI form to avoid an investigation of Whetstone Gardens. Hodge testified

that a finding of misappropriation by a facility employee would result in the employee being placed on an interstate registry and prevent that individual from being employed by a nursing home or residential care facility. Thus, Solt argues, falsifying the SRI form would not benefit Solt or Whetstone Gardens because the consequences from an investigation would fall on any employee found to have misappropriated resident funds, not on Solt herself or on the facility.

{¶ 31} Even if Solt is correct that the direct consequences of an ODH investigation would fall on an employee found to have committed a misappropriation, there was evidence at trial indicating Solt wished to avoid an investigation. In her initial internal e-mail about the Floyd incident, Solt indicated that a police report was only being filed because Floyd's niece was "making a fuss." (State's Ex. T.) Similarly, although Solt admitted a search of Floyd's room was unsuccessful in locating the missing money, she stated "I don't want to substantiate" the misappropriation claim in the final SRI form. (State's Ex. U.) These statements suggest Solt wanted to avoid an external investigation of Floyd's claim; the false statements she made in the final SRI form helped secure that result. Viewed in the light most favorable to the prosecution, this evidence demonstrates Solt knowingly sought to obtain the benefit of avoiding an investigation into Floyd's claim. *See State v. Campbell*, 4th Dist. No. 20CA723, 2021-Ohio-2482, ¶ 69 ("By failing to list the FOJ fund as a creditor on his financial disclosure statement, appellant avoided Ohio Ethics Commission scrutiny and possible criminal or civil liability or disciplinary actions. Even though the record does not contain direct evidence that appellant intended to defraud, the facts and circumstances allowed the factfinder to determine that appellant possessed an intent to defraud.").

{¶ 32} Solt further argues that finding she had a purpose to defraud required the trial court to stack inferences. Solt claims it was necessary for the trial court to infer that (1) a Whetstone Gardens employee stole Floyd's money, (2) Solt knew an employee stole the money, (3) ODH's unwritten policy that it was disinclined to investigate misappropriation cases whether the money was recovered was well known, (4) Solt knew ODH was unlikely to investigate an unsubstantiated misappropriation claim where the money was recovered, and (5) Solt falsified the SRI form to avoid an ODH investigation. Solt asserts this is contrary to the prohibition on stacking inferences to support a finding of guilt.

{¶ 33} "A trier of fact may not draw 'an inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts.' " *State v. Cowans*, 87 Ohio St.3d 68, 78 (1999), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus. "The rule against inference stacking prevents a finder of fact from arriving at an inference that is so attenuated that it amounts to pure speculation or conjecture." *State v. Craig*, 10th Dist. No. 22AP-215, 2023-Ohio-1003, ¶ 29. However, the rule against stacking inferences "does not forbid the use of parallel inferences in combination with additional facts." *Donaldson v. N. Trading Co.*, 82 Ohio App.3d 476, 481 (10th Dist.1992). *See also Cowans* at 78, quoting *Hurt* at paragraph two of the syllabus ("However, 'an inference * * * based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in.' ").

{¶ 34} In this case, it was not necessary for the trial court to stack inferences to find Solt guilty of tampering with records with respect to the final SRI form for the Floyd incident. The trial court did not need to infer that a Whetstone Gardens employee stole Floyd's money or that Solt knew an employee had stolen Floyd's money. It was not necessary for the state to prove that Floyd's money actually had been stolen or that Solt believed it was stolen. Instead, the state was required to establish that Solt falsified a record that was kept by or belonged to a government entity. As explained above, the evidence presented at trial was sufficient to establish that and no inference was required to conclude that Solt falsified a record. Further, no inference was required to find that ODH's practice of not investigating unsubstantiated misappropriation claims based on a misunderstanding or where the missing money was later found was "pretty well known" because Hodge directly stated that in his testimony. (Tr. Vol. I at 45.)

{¶ 35} The trial court was required to make inferences to find Solt had a purpose to defraud or knowingly facilitated a fraud by falsifying the final SRI form to avoid an ODH investigation. Contrary to Solt's argument, however, this required, at most, two inferences: (1) that Solt was aware of ODH's practice of not investigating unsubstantiated misappropriation claims when the missing money was recovered, and (2) that Solt made the false statement in the final SRI form related to the Floyd incident to avoid an investigation. Neither of these inferences was based entirely on another inference and therefore did not violate the prohibition on stacking inferences. The trial court could infer

that Solt knew ODH was unlikely to investigate an unsubstantiated misappropriation claim based on Hodge's testimony that this was well known and based on Solt's position as director of nursing and participation in internal investigations of misappropriation. The trial court could infer that Solt falsified the final SRI form to avoid an investigation based on the statements in her e-mails suggesting she wished to avoid an external investigation. Thus, we reject Solt's argument that the finding of guilt required stacking inferences.

{¶ 36} We also find this case distinguishable from *State v. Agee*, 8th Dist. No. 104915, 2017-Ohio-8164, which Solt cites. In relevant part, Agee was convicted of tampering with records related to interim food stamp benefits redetermination reports she signed. Agee testified at trial that for redetermination of her benefits, a caseworker would call her to ask about changes in income or household status, type up an interim report, and mail it to her to be signed. *Agee* at ¶ 31. Based on subsequent tax records, the state alleged Agee failed to report certain self-employment income on those interim reports. *Id*. at ¶ 4. The state's only witness at trial was a county department of job and family services investigator who had not conducted the investigation, but only received the file from another investigator who was no longer with the agency and reviewed the contents of the file. *Id*. at ¶ 6. Agee asserted at trial that she told caseworkers about her self-employment income and that at least two redetermination forms were missing and had not been introduced into evidence. *Id*. at ¶ 38. In reversing the conviction for lack of sufficient evidence that Agee knowingly executed the reports with a purpose to defraud, the Eighth District noted Agee's testimony that she truthfully provided caseworkers with information and did not know how the caseworkers determined the income amounts contained in the reports. *Id*. at ¶ 62. The court further noted that because the investigator who testified did not personally investigate the case or talk with Agee, his testimony regarding her knowledge was "purely speculative." *Id*. at ¶ 63. In the present case, by contrast, the state presented evidence of Solt's knowledge and intent through the statements contained in her e-mails. Thus, there was more than pure speculation on which the trial court rely in finding Solt acted with purpose to defraud.

{¶ 37} Viewing the evidence presented at trial in the light most favorable to the prosecution, as we must when considering the sufficiency of the evidence, we cannot conclude that it is apparent that reasonable minds could not reach the conclusion reached

by the trial court in this case. *See Aekins* at ¶ 71. Accordingly, we overrule Solt's first assignment of error.

## IV. Conclusion

**{¶ 38}** For the foregoing reasons, we overrule Solt's first assignment of error, render moot her second assignment of error, and sustain her third assignment of error. Having concluded the trial court erred in exercising its jurisdiction by conducting a bench trial without a signed written waiver of Solt's right to a jury trial, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter to that court to vacate the judgment entry of conviction and sentence.

*Judgment reversed; cause remanded.*

LUPER SCHUSTER and BOGGS, JJ., concur.

———————————