[Cite as *State v. Dietrich*, 2024-Ohio-2039.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

ERICH H. DIETRICH,

      Defendant-Appellant.

CASE NO. 2023-L-117

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 000311

# O P I N I O N

Decided: May 28, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Ruth Fischbein-Cohen*, 3552 Severn Road, Suite 613, Cleveland Heights, OH 44118 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Erich H. Dietrich, appeals the judgment of the Lake County Court of Common Pleas, convicting him on one count of Receiving Stolen Property, a felony of the fifth degree. At issue is whether the state met its burdens of production and persuasion; appellant also challenges the trial court's order on sentence. We affirm.

{¶2} On the afternoon of June 21, 2021, Detective Ryan Butler of the Mentor City Police Department was conducting surveillance in an unmarked vehicle. While doing so, he observed a Mitsubishi Lancer with three people inside, later identified as Emily Canter

(the driver), Daniel Gould (the front-seat passenger), and appellant (a back-seat passenger). The vehicle turned into a gas station and the detective pulled next to one of the pumps. Detective Butler observed Ms. Canter and appellant enter the gas station and leave multiple times without any purchases. The detective noted that he considered their actions abnormal and ran the plates of the Mitsubishi. The vehicle was registered to a 63-year-old male. According to the detective, the occupants of the car were approximately in their late-20s or early 30s.

{¶3} The individuals re-entered the Mitsubishi and left the gas station. The detective observed Ms. Canter turn southbound without signaling and then observed her change lanes without signaling. The detective notified Officer Brian Yenkevich of the traffic violations. Officer Yenkevich was driving a marked cruiser. Upon locating the Mitsubishi, the officer stopped the vehicle for the traffic violations observed by Detective Butler. The detective arrived at the scene shortly after the stop and remained for its entirety.

{¶4} During the stop, Detective Butler noticed numerous DeWalt power tools stacked in the back seat next to appellant in plain view. The tools were obviously new and still in their boxes and were placed in or near Home Depot shopping bags. The detective noted that the new, unopened power tools starkly contrasted with the disheveled nature of the vehicle. When asked, Ms. Canter did not say where the tools came from and stated she did not wish to speak to officers about the tools. Officers searched the vehicle and found a receipt from the Home Depot in Macedonia which indicated "Transaction Suspended," "Invalid Receipt," "No Money Taken." Given the circumstances, Detective Butler believed the merchandise was stolen.

2

{¶5} The detective contacted the Home Depot in Macedonia to inquire into surveillance footage from the store. Surveillance video from the store depicted appellant and Mr. Gould together in the Home Depot, approximately an hour before the traffic stop. The footage shows appellant selecting an item off the shelf and appearing to place it with other merchandise in a shopping cart pushed by Mr. Gould.

{¶6} Rebekah Livingston, a cashier at Home Depot, was working in the Garden Center on June 21, 2021. Appellant and Mr. Gould came to Ms. Livingston's register, but she did not have a tool to deactivate the security sensor. According to Ms. Livingston, the "Transaction Suspended" receipt was issued and she instructed the men to go inside the main store to pay for the items. Upon re-entering the main store, the men exited without paying. The total value of the items taken was $1,066.84.

{¶7} Appellant was later indicted on one count of Receiving Stolen Property, in violation of R.C. 2913.51(A), a felony of the fifth degree. The matter proceeded to a jury trial. After the state rested, defense counsel moved for acquittal, pursuant to Crim.R. 29. The motion was overruled. The defense presented no evidence. The jury found appellant guilty on the sole charge. After a hearing, appellant was sentenced to a prison term of 11 months. The term was ordered to be served concurrently to a prison term appellant was serving on an unrelated case from Ashtabula County, Ohio.

{¶8} Appellant now appeals and assigns two errors for our review. His first states:

{¶9} "The finding of guilt was not by the required standard of proof 'beyond a reasonable doubt.'"

Case No. 2023-L-117

{¶10} Appellant's assignment of error challenges the sufficiency and manifest weight of the evidence supporting the conviction. When an appealing party challenges both the sufficiency and the weight of the evidence, an appellate court's conclusion that the verdict is consistent with the manifest weight presupposes it was also supported by sufficient evidence. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

{¶11} With this point in mind, a court reviewing a challenge to the manifest weight of the evidence observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994). Put differently, the court must assess conflicting testimony, review rational inferences that may be drawn from the evidence, and evaluate the strength of the conclusions drawn therefrom. A challenge to the weight of the evidence requires a court to consider whether the state met its burden of persuasion. *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶ 78.

{¶12} Appellant was convicted of receiving stolen property, in violation of R.C. 2913.51(A). That statute provides: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶13} Proof of guilt in a criminal prosecution may be made by circumstantial evidence, real/physical evidence, and direct evidence, or any combination of the three,

4

and all three have equal probative value. *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18.

{¶14} "Possession of stolen property for purposes of the receiving stolen property statute, R.C. 2913.51, may be constructive as well as actual. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, (1982) syllabus. Constructive possession can be proved solely by circumstantial evidence. *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶ 38.

{¶15} Direct and circumstantial evidence inherently possess the same probative value. *State v. Shine*, 2023-Ohio-2261, 220 N.E.3d 137, ¶ 38 (11th Dist.), citing *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶ 39. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish[.]" *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence is defined as testimony not grounded on actual personal knowledge or observation of the facts at issue, but of other facts from which inferences are drawn, illustrating indirectly the facts sought to be established. *Shine* at ¶ 38, *see also State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶ 22. Accordingly, because the probative values of direct and circumstantial evidence are intrinsically similar, there is no sound basis for drawing a distinction as to the weight to be assigned to each.

5

**{¶16}** Further, factors to be considered in determining whether reasonable minds could conclude a defendant knew or should have known property has been stolen include: "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise." (Citations omitted). *State v. Davis*, 49 Ohio App.3d 109, 112, 550 N.E.2d 966 (8th Dist.1988).

**{¶17}** In addition, "[i]n a prosecution for receiving stolen property, a finder of fact may determine guilt by inference when the accused's possession of recently stolen property is not satisfactorily explained in light of surrounding circumstances developed from the evidence." *In re B.B.,* 8th Dist. Cuyahoga No. 81948, 2003-Ohio-5920, ¶ 19.

**{¶18}** In this case, the state adduced evidence that satisfies each element of the receiving stolen property statute. During the stop, appellant was situated immediately adjacent to the merchandise. And the merchandise was in new packaging and in bags from the Home Depot. No explanation, let alone a satisfactory, reasonable explanation was offered for the merchandise's presence next to appellant. Despite appellant's contention, the jury did not infer constructive possession by his "mere presence" in relation to the merchandise. To the contrary, appellant's proximity to the stolen merchandise, as well as the circumstantial evidence of his participation in the theft, demonstrates appellant, at least, "retained" the stolen merchandise through his ability to exercise dominion or control over the items in the vehicle.

**{¶19}** Moreover, the jury could reasonably infer that appellant knew or had reason to know the items were stolen. The driver of the Mitsubishi, Ms. Canter, could not explain

6

where the merchandise came from and subsequently declined to further comment. However, when appellant was arrested, he admitted to Patrolman Zachery Skoczen, a Mentor police officer, that "the people I was driving with, they ended up stealing some shit * * * and I was just sitting in the back seat of the car."

{¶20} Finally, the video surveillance from the Macedonia Home Depot shows appellant with Mr. Gould when the items were taken and, in fact, appellant assisting in selecting merchandise. And appellant and Mr. Gould were still together when the merchandise was recovered, approximately one hour after the theft.

{¶21} Considering these points together, the jury could find, beyond a reasonable doubt, that appellant retained the Home Depot merchandise knowing or having reasonable cause to believe it was stolen.

{¶22} One final point deserves attention. Appellant takes significant issue with the state's alleged failure to meet its burden of proof. The phrase "reasonable doubt" as well as the standard of proof "beyond a reasonable doubt" are defined in R.C. 2901.05(E), which provides:

> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

{¶23} Appellant sets forth several scenarios which, if supported by some compelling evidence, might create some form of doubt. For instance, he asserts simply because he pulled an item from the shelf does not mean he intended to steal the item or

7

Case No. 2023-L-117

aided in a theft; further, he posits that Ms. Livingston, the cashier, *could* have been involved in the theft by giving an invalid receipt and directing Mr. Gould inside the main store so he could leave with the merchandise. Under this proposed theory, appellant could be considered an unwitting and accidental non-participant who was involved by association, but not as a knowing aider and abettor. The evidence, however, does not support these speculations.

{¶24} The evidence demonstrates appellant was with Mr. Gould in the Macedonia Home Depot, he assisted in placing at least one item in their cart, the men left the store without paying after obtaining an invalid receipt, and the stolen merchandise was immediately adjacent to appellant in the Mitsubishi for approximately an hour after the theft. While appellant argues other conceivable theories indicate the jury lost its way in convicting him, such theories would require the state to prove appellant's guilt beyond *all* doubt. That is not the standard of proof in criminal matters. As R.C. 2901.05(E) highlights, "[r]easonable doubt is not mere possible doubt[;]" indeed, proof beyond a reasonable doubt is that which an ordinary person would rely and act upon in his or her most important affairs. We hold that the state provided sufficient, credible circumstantial evidence to satisfy its burden of proof beyond a reasonable doubt.

{¶25} Appellant's first assignment of error lacks merit.

{¶26} Appellant's second assignment of error provides:

{¶27} "It was error to sentence Erich Dietrich to eleven months for a first time felony five offense."

{¶28} Appellant contends the trial court erred by sentencing him to an 11-month term of imprisonment for a first felony conviction. Initially, we underscore appellant *did*

8

have another felony conviction in an unrelated matter at the time of sentencing. Appellant was serving prison time on that conviction at sentencing and the trial court ordered the underlying sentence concurrently with the Ashtabula sentence. In this regard, appellant's construction of the record is erroneous.

{¶29} The standard for reviewing felony sentences is set forth under R.C. 2953.08(G)(2) and provides:

> The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the sentence is otherwise contrary to law.

{¶30} "A sentence is contrary to law when it is 'in violation of statute or legal regulations,'" such as where it falls outside of the statutory range for the offense or where the trial court fails to consider the purposes and principles of sentencing under R.C. 2929.11 and the factors in R.C. 2929.12. *State v. Meeks*, 11th Dist. Ashtabula No. 2022-A-0060, 2023-Ohio-988, ¶ 11, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34. "Nothing[, however,] in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12[,]" and an appellate court cannot vacate a sentence "based on its view that the sentence is not supported by the record[.]" *Jones* at ¶ 39 and 42; *State v. Reed*, 11th Dist. Ashtabula No. 2022-A-0082, 2023-Ohio-1324, ¶ 13 (we

9

"cannot review alleged error under R.C. 2929.11 and R.C. 2929.12 to evaluate whether the sentencing court's findings for those sentences are unsupported by the record").

**{¶31}** Appellant's sentence is not contrary to law. It is within the prescribed, available punishments for felonies of the fifth degree (the maximum term for a felony five is 12 months. *See* R.C. 2929.14(A)(5)). And the court stated on record that it considered the R.C. 2929.11 and the relevant R.C. 2929.12 seriousness and recidivism factors. This court is not permitted to independently weigh the evidence and substitute its judgment for the trial court's sentencing determination for an individual sentence. *Jones.* We therefore find no error in the trial court's imposition of the 11-month term of imprisonment.

**{¶32}** Appellant's second assignment of error lacks merit.

**{¶33}** For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

10